UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  09-62047-Civ-COOKE/BANDSTRA

JAMES L. ABBATE, *et al.,*

    Plaintiffs,

vs.

WELLS FARGO BANK,
NATIONAL ASSOCIATION, *et al.*,

    Defendants.
_____/

**OMNIBUS ORDER STRIKING PLAINTIFFS' FIRST AMENDED COMPLAINT,
DENYING PLAINTIFFS' MOTION FOR REMAND AND
GRANTING DEFENDANTS' MOTION TO TRANSFER**

THIS MATTER is before me on Plaintiffs' Motion for Remand [ECF No. 6] and Defendants' Motion to Transfer [ECF No. 11]. For the reasons discussed below, Plaintiffs' First Amended Complaint is stricken, Plaintiffs' Motion for Remand is denied and Defendants' Motion to Transfer is granted.

## *I. BACKGROUND*

Medical Capital Holdings ("MCH," and collectively with its affiliates, "MedCap") is a California based financing company that purchases accounts receivable at a discount from healthcare provides and then collects the debts owed on those accounts. (Compl. ¶ 5 [ECF No. 1-6]). MCH raised money for the accounts receivable purchases through six separate special purpose corporations,[1] each of which issued notes (the "Notes") to qualified investors. (Compl. ¶¶ 7, 1878-82  [ECF Nos. 1-6 & 1-10]). The Notes were sold by registered broker-dealers to

---

[1] The six special purpose corporations were Medical Provider Financial Corporation I ("MP I"), Medical Provider Financial Corporation II ("MP II"), Medical Provider Financial Corporation III ("MP III"), Medical Provider Financial Corporation IV ("MP IV"), Medical Provider Financial Corporation V ("MP V") and Medical Provider Financial Corporation VI ("MP VI").

investors under SEC Regulation D for private placements and were to be secured by separate assets. (Compl. ¶¶ 9, 1878-79 [ECF Nos. 1-6 & 1-10]). Separate trust accounts were created to hold the assets and MedCap also created separate trust indentures for each separate series of Notes. (Compl ¶¶ 1922-23, 1963-64 [ECF No. 1-10]). Defendant The Bank of New York Mellon Corporation ("BNYM") served as the indenture trustee in connection with the Notes sold by MP II, MP IV and MP VI. (Compl. ¶ 20 [ECF No. 1-6]). Defendant Wells Fargo Bank, National Association ("Wells Fargo") served as the indenture trustee for the Notes sold by MP I, MP III and MP V. (*Id.*). The Plaintiffs in this action invested in Notes issued by the MCH corporate affiliates. (Compl. ¶ 1 [ECF No. 1-6]).

On November 25, 2009, Plaintiffs filed a Complaint in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. The Complaint alleges that MCH engaged in a variety of wrongful acts and omissions including misappropriating investors' funds to pay administrative fees, making inappropriate investments, and failing to issue accurate financial statements. (Compl. ¶¶ 1848-1916 [ECF No. 1-10]). The Complaint further alleges that as the indentured trustees for the MCH Notes, BNYM and Wells Fargo "assum[ed] fiduciary duties to protect the noteholders' interests," and should have detected and prevented the alleged fraudulent activity. (Compl. ¶ 1851 [ECF No. 1-10]). The Complaint asserts four (4) causes of action against each Defendant individually: breach of contract (Count I & Count V); breach of fiduciary duty (Count II & Count VI); securities fraud in violation of Chapter 517 of the Florida Securities and Investor Protection Act (Count III & Count VII); and negligence (Count IV & Count VIII). (Compl. ¶¶ 1917-1998 [ECF No. 1-10]).

On December 29, 2009, Defendants removed this action to this Court based upon diversity of citizenship arising under the Class Action Fairness Act of 2005 ("CAFA"), 28

U.S.C. § 1332(d) and 28 U.S.C. §§ 1441, 1446 and 1453. The Notice of Removal contends that federal jurisdiction is proper because the amount in controversy exceeds $5,000,000.00 in the aggregate, there is minimal diversity, the action involves monetary claims of 100 or more plaintiffs and the claims involve common questions of law or fact. (Def.'s Notice of Removal ¶ 5 [ECF No. 1-1]).

On January 6, 2010, Plaintiffs filed a Motion for Remand [ECF No. 6] arguing that this Court does not have jurisdiction over this case because CAFA provides a carve-out exception which restricts the district courts from asserting jurisdiction over any class action that solely involves a claim "that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1332(d)(9)(C). In challenging Plaintiffs' Motion to Remand, Defendants argue that the case should not be remanded because the Florida Securities and Investor Protection Act ("FSIPA") claims take the action outside of the CAFA jurisdictional carve-out exception. (Def.s Opp. to Pl.'s Mot. for Remand [ECF No. 30]).

On January 12, 2010, Defendants filed a Motion to Transfer pursuant to 28 U.S.C. § 1404(a). Defendants argue that the transfer of this action to the United States District Court for the Central District of California is appropriate because there are currently ten related law suits against MCH, BNYM, Wells Fargo and the brokers-dealers, all of which arise from the same nucleus of operative facts, all of which were filed prior to this action, and all of which have been assigned to the Honorable Judge David O. Carter. Specifically, Defendants argue that the totality of the circumstances, including the multiplicity of actions growing out of the alleged fraud committed by MCH, the interests of judicial economy, the conservation of the parties' resources and the avoidance of inconsistent rulings all support the transfer of this action.

On February 26, 2010, in response to the arguments asserted in Defendants' Opposition

to Plaintiffs' Motion to Remand, Plaintiffs filed their First Amended Complaint [ECF No. 41], which withdraws the FSIPA claims. Plaintiffs allege that the First Amended Complaint allows for the undeniable applicability of the CAFA carve-out exception, which would require this Court to remand the action to the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. (Pl.'s Rep. to Def.'s Opp. to Pl.'s Motion for Remand [ECF No. 40]).

## II. LEGAL STANDARDS

*Motion To Remand*

A defendant may remove an action to a U.S. District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). District courts have original jurisdiction over "mass action" lawsuits. To qualify as a mass action, the lawsuit must meet the following requirements: (1) the amount in controversy is at least $5,000,000.00; (2) there is minimal diversity; (3) the action involves the monetary claims of at least 100 plaintiffs; and (4) the claims involve common questions of law or fact. *See* 28 U.S.C. § 1332(d); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202-03 (11th Cir. 2007).

District courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. If the plaintiff challenges the removal by filing a timely motion to remand, the district court's inquiry is limited to the evidence available when the motion to remand was filed, "i.e., the notice of removal and accompanying documents." *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1213-14 (11th Cir.2007). However, removal statutes are construed narrowly, and when the plaintiff and the defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994).

*Motion to Transfer*

A motion to transfer from one federal district to another is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute authorizes a court to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses and the public, and to conserve time, energy and money. *See Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).  "However, '[t]he plaintiff's choice of forum should not be disturbed unless it is *clearly outweighed* by other considerations.' " *Id.* (citing *Robinson v. Giamarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir.1996)).  The Eleventh Circuit has recognized that district courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice. *See England v. ITT Thompson Industries, Inc.,* 856 F.2d 1518, 1520 (11th Cir.1988).

### III.  ANALYSIS

#### A.  *Plaintiffs' First Amended Complaint*

Plaintiffs withdrew their FSIPA claims when they filed their First Amended Complaint on February 26, 2010.  The FSIPA claims allege that Defendants engaged in fraudulent actions related to marketing and selling the Notes to the Plaintiffs.  The rationale for the amended claims can be found in Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Remand [ECF No. 40] where it is admitted that the FSIPA claims were removed to bring the action "within the scope of the securities exception which [would] accordingly deny this Court subject matter jurisdiction" [ECF No. 40].  However, Plaintiffs failed to seek leave of this Court or Defendants' written consent prior to filing the First Amended Complaint.

> "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a).

Plaintiffs' Motion for Remand challenges this Court's subject matter jurisdiction while Defendants' Motion to Transfer challenges venue. Challenges to subject matter jurisdiction and venue are "motions" within the meaning of Rule 15(a). *See* Fed. R. Civ. P. 12(b). Under Rule 15(a), Plaintiffs' right to amend the Complaint as a matter of course terminated January 27, 2010. However, Plaintiffs elected to file the First Amended Complaint 51 days after they challenged this Court's subject matter jurisdiction, and did so only in an effort to circumvent Defendants' challenges to the proposed remand.

Although leave to amend a pleading should be given "when justice so requires," Fed. R. Civ. P. 15(a), parties are still obligated to comply with the Federal Rules of Civil Procedure. A court "need not allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (quotation marks omitted). Allowing Plaintiffs to amend their Complaint would effectively allow them to amend around their Motion for Remand, which would be prejudicial to the Defendants. Absent leave of this Court or the Defendants' written consent, I find that the First Amended Complaint is procedurally invalid and is therefore stricken. The original Complaint filed November 25, 2009, is the operative complaint in this action.

Even if Plaintiffs' First Amended Complaint were procedurally proper, it would be futile

and irrelevant for purposes of ruling on Plaintiffs' Motion for Remand. Where a plaintiff challenges removal by filing a motion to remand, the court's inquiry is limited to the documents available when the motion to remand is filed. *Lowery*, 483 F.3d at 1213-14. Here, the universe of evidence available when the Plaintiffs' Motion for Remand was filed was the Notice of Removal and Plaintiffs' original Complaint. Therefore, the Notice of Removal and the original Complaint, including all factual allegations and claims asserted therein, are the only documents pertinent to the determination of this Court's jurisdiction.

### B. The Applicability of 28 U.S.C. Section 1332(d)(9)(C).

Pursuant to 28 U.S.C. § 1332(d)(9), District Courts shall not have original jurisdiction over any class action that solely involves:

> (C) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the regulations issued thereunder)

28 U.S.C. § 1332(d)(9)(C).

Plaintiffs contend that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(9)(C). Therefore, I must first determine whether the exception to CAFA's grant of original federal jurisdiction for is applicable in this case. The parties concede that Plaintiffs' FSIPA claims in the original Complaint render the CAFA exception inapplicable. I agree. Pursuant to the allegations of the original Complaint, the FSIPA claims refer to actions taken prior to the issuance of the Notes. "Claims that 'relate[ ] to the rights … and obligations' 'created by or pursuant to' a security must be claims grounded in the terms of the security itself." *Estate of Pew v. Cardarelli,* 527 F.3d 25, 31-32 (2d Cir. 2008). Allegations that the Notes were fraudulently marketed, or other wrongful acts which occurred prior to the issuance of the Notes,

do not relate to the rights and obligations created by or pursuant to the security in question and therefore do not fall within the scope of the CAFA jurisdictional exception. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(11). Accordingly, Plaintiffs' Motion to Remand is denied.

### *C. Transfer to the United States District Court for the Central District of California.*

Courts engage in a two-step analysis under 28 U.S.C. § 1404(a) to determine the propriety of transfer to another district court. First, courts determine whether the action could have been brought in the venue in which transfer is sought. Second, courts assess whether convenience and the interest of justice require transfer to the requested forum. *See Thermal Technologies,* 282 F.Supp.2d at 1376; *Jewelmasters, Inc. v. May Dep't Stores,* 840 F.Supp. 893, 894-95 (S.D.Fla.1993) (citing *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). This case could have been filed in the Central District of California because all Defendants are subject to personal jurisdiction there and because a substantial part of the events giving rise to Plaintiffs' claims occurred there. *See* 28 U.S.C. § 1391(a)(1), (2). Federal jurisdiction also exists over the Plaintiffs' claims under CAFA. Accordingly, this action could have been brought in the Central District of California. 28 U.S.C. § 1404(a).

Section 1404(a)'s second step analyzes whether the Central District of California is the more appropriate venue for this case. In making this determination, courts focus on a number of potential factors including: (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a

plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

In the present case, all factors except Plaintiffs' choice of venue support the transfer of this case to the Central District of California. After reviewing the filings on record, I find that most of the material evidence in this case, including party and non-party witnesses and documents, is predominately located in the Central District of California, not the Southern District of Florida. Defendants have numerous potentially critical witnesses residing in the Central District of California. Furthermore, non-party witnesses, perhaps even more crucial to the fair resolution of this case, as well, reside predominantly in the Central District of California. The Southern District of Florida may lack subpoena power over those witnesses altogether, thus having the potential of losing key testimony. See Fed. R. Civ. P. 45(c)(3)(A). Finally, the Central District of California houses the bulk of relevant documents bearing on the alleged fraudulent activity of MCH.

Furthermore, the issues in this case and those cases pending before the Honorable Judge David O. Carter are similar enough to trigger the application of the federal common law doctrine known as the "first-filed" rule. Under the "first-filed" rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption" that all claims should be heard in the forum of the first-filed suit. *Manuel*, 430 F.3d at 1135. Once the moving party establishes that the issues and parties are "overlapping", any "party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)). The first-filed rule is

premised on judicial economy, comity amongst the district courts, and the desire to avoid potentially conflicting rulings. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988).

The extent of the overlap between this case and the cases pending before the Honorable Judge David O. Carter is revealed in Defendants' Motion to Transfer. Defendants argue that there are five putative class actions, now consolidated as *Masonek v. Wells Fargo Bank, N.A.*, No. SACV 09-01048 (C.D. Cal.) brought by noteholders, such as the Plaintiffs in this action, against Wells Fargo and BNYM. Defendants also argue that there are four putative class actions, now consolidated as *McCoy v. Cullum & Burks Secs., Inc.*, No SAVC 09-01084 (C.D. Cal.), in which the noteholders sued the broker-dealers who allegedly sold them the notes.

## IV. CONCLUSION

In light of the totality of the circumstances, including the multiplicity of other actions and the factors that support transfer, there is little doubt that this case should be litigated in the Central District of California. To deny transfer to that District would be to contravene the interests of justice. This case does not belong in the Southern District of Florida. Therefore, I hereby

**ORDER AND ADJUGE** as follows:

1. Plaintiffs' First Amended Complaint is **STRICKEN**.
2. Plaintiffs' Motion for Remand is **DENIED**.
3. Defendants' Motion to Transfer is **GRANTED**.
4. This case is **DISMISSED WITHOUT PREJUDICE.**
5. The Clerk shall **CLOSE** this case.
6. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, at Miami, Florida this 31st day of August 2010.

*[signature: Marcia G. Cooke]*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandtra, U.S. Magistrate Judge*
*Counsel of record*