O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL CAPITAL HOLDINGS, INC., ET AL.,<br><br>Defendants.<br><br>This order relates to<br><br>SA CV 09-1048 DOC (RNBx) - *Masonek*<br><br>SA CV 10-0548 DOC (RNBx) - *Bain*<br><br>CV 10-6561 DOC (RNBx) - *Abbate*<br><br>SA CV 10-2145 DOC (RNBx) *In re Medcap* | Case No. SA CV 09-0818 DOC (RNBx)<br><br>**ORDER DENYING DEFENDANT BANK OF NEW YORK MELLON'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

Before the Court is the Bank of New York Mellon's Motion for Determination of Good Faith Settlement (Dkt. 1006, SACV 09-0818, *SEC v. Medical Capital Holdings Inc.* ("*SEC case*")).[1] As part of a proposed settlement between the Bank and Plaintiff Noteholders for $114 million, the parties agreed that the Bank would move for an order that would: (1) deem this a good faith settlement under California Code of Civil Procedure Sections 877 and 877.6, and (2) bar other joint tortfeasors or co-obligors from any further claims against the Bank "for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Code Civ. Proc. § 877.6(c).[2]

For the reasons discussed below, the Court finds that the statute does not apply to the circumstances of this settlement because, as this Court has held in prior motions practice,[3] Bank of New York Mellon is not a joint tortfeasor, or even a tortfeasor, in this action—nor is it a co-obligor as the term is used in the statute. This determination means the Court need not reach the issues that law firms Manatt Phelps & Phillips ("Manatt"), and Sedgwick LLP ("Sedgwick") raise in their respective oppositions (Dkts. 1009 & 1013).

**I.     Background**

This is an action for breach of contract against Bank of New York Mellon for its actions as indenture trustee to certain Medical Capital special purpose corporations. Medical Capital created those special purpose corporations to sell promissory notes to investors. After the Securities and Exchange Commission sued Medical Capital in August 2009, alleging securities fraud (Dkt. 1), the investors, hereafter referred to as Plaintiffs or Noteholders, began to sue over the losses to their investments. The lawsuits became one class action, *Masonek et al. v. Wells*

---

[1] Unless otherwise specified, docket citations in this order are to the *SEC case*.

[2] The agreement to move for a good faith settlement determination is paragraph 91 to the Stipulation of Settlement Between Bank of New York Mellon and Plaintiffs (Dkt. 484-1, *In re MedCap*, hereafter "Stipulation"), and the intended Order is Exhibit G to the Stipulation.

[3] See Order Granting Motions to Dismiss (Dkt. 302, *In re MedCap*). The Court granted motions to dismiss filed by third-party broker dealers. Bank of New York Mellon, as well as the other defendant in this case, Wells Fargo, had filed third party complaints against the dealers, seeking equitable indemnification and contribution.

-2-

*Fargo et al.*, SA CV 09-1048 DOC (RNB) *("Masonek"); and* two mass actions, *Bain et al., v. Wells Fargo et al.,* SA CV 10-0548 DOC (RNB) *("Bain"); and Abbate et al., v. Wells Fargo et al.,* CV 10-6561 DOC (RNB) *("Abbate").* The three actions are part of the consolidated case, *In re Medical Capital Holdings*, 10-ml-2145 DOC (RNB) ("*In re MedCap*").

On December 20, 2012, Bank of New York Mellon and Plaintiffs informed the Court (Dkt. 430, *In re MedCap*) that they had reached a settlement. The parties settled just before a hearing on motions for summary judgment on the issue of which party—the Noteholders or the Receiver appointed to oversee Medical Capital—had standing to pursue claims against Bank of New York Mellon and the other defendant in the case, Wells Fargo Bank, N.A. The Receiver asserted exclusive standing to sue both banks and had reached a settlement agreement with Bank of New York Mellon for $57 million, and with Wells Fargo for $49 million. The Court later determined that the Noteholders had standing to sue; they and Wells Fargo reached a settlement agreement just before trial.[4]

The Bank of New York Mellon Settlement Stipulation, filed on February 20, 2012, for $114 million, is effective at the point that various orders and judgments in all Noteholder cases become final. Stip. ¶ 32. By "final," the parties meant the point at which key orders and judgments were no longer subject to judicial review. *Id.* The parties agreed that an appeal from any order on the good faith of the settlement does not delay the date the settlement becomes effective. *Id.* ¶ 34. And they agreed that an order on the good faith of the settlement is part of the final orders only "if the Court determines that California Code of Civil Procedure Section 877.6, et seq, applies." *Id.*

**II.   Discussion**

   **a.   California Code of Civil Procedure Sections 877 and 877.6**

California Code of Civil Procedure § 877 provides, in relevant part, that "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given

---

[4] That settlement is not at issue here.

in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," that release, dismissal, or covenant does two things:

> (a) "It shall not discharge any other such party from liability unless its terms so provide, but *it shall reduce the claims against the others* in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater," (emphasis added); and
> (b) "It shall discharge the party to whom it is given from all liability for any contribution to any other parties,"

Section 877.6 explains how a party can seek a good fair determination from a court that triggers results (a) and (b) above. First, Section 877.6 notes that any party to an

> action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors.

And, similar to 877(b) quoted above, another section repeats one of the results of that court determination of good faith: it "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Code Civ. Proc. § 877(c).

### b. Movant's Argument

Bank of New York Mellon offers little argument about whether sections 877 and 877.6 apply, and instead focuses on the good faith of the settlement and whether the Court should determine the amount of any offset, Cal. Civ. Code Proc. § 877(a), that Sedgwick and Manatt could claim. *See* Motion at 7-10; BNYM Reply at 1-3.

The Bank does mention that it "in no way concedes that it is a 'tortfeasor' pursuant to Section 877.6, or that any claim for equitable indemnity or contribution can be pursued against it." Motion at 7. And it correctly notes that the Court previously considered whether it was a

-4-

1 joint tortfeasor and determined that it was not. *Id.* (citing Order Granting Motions to Dismiss
2 (Dkt. 302) at 9, *In re MedCap*). This determination was in the context of the Bank seeking
3 equitable indemnity against the broker dealers that sold the investment notes to Plaintiffs.

### c. Responses to the Motion

The Receiver for Medical Capital has sued Sedgwick for professional negligence in its role as counsel to the Medical Capital entities on certain loans. *See* Second Amended Complaint, *Thomas A. Seaman v. Sedgwick LLP*, SACV 11-0664-DOC (RNB) (Dkt. 53). Sedgwick here argues that it must be "afforded the offset to which it is entitled as quid pro quo to having its various claims for contribution and indemnity forever barred," Sedgwick Response (Dkt.1013) at 1. The reason offered for this offset is that, in fact, Sedgwick and the Bank are tortfeasors alleged to be liable for the same tort, and the actions against them stem from the same indivisible injury. *Id.* at 2.

The Receiver is also pursuing claims in arbitration against Manatt for its actions as counsel to Medical Capital. Manatt, like Sedgwick, does not contest the good faith of the settlement.[5] It argues that only the arbitrators can determine the issue of offset, and joins Sedgwick's response as to the offset, assuming the Court determines it can hear that issue.

### d. Sections 877 and 877.6

When first enacted, Sections 877 and 877.6 "addressed issues unique to *tort* litigation." *Topa Ins. Co. v. Fireman's Fund Ins. Companies*, 39 Cal. App. 4th 1331, 1337, 46 Cal. Rptr. 2d 516, 519 (1995). Section 877 was enacted to abrogate common law rules that there was no right

---

[5] If the statute were to apply, the Court would have no difficulty concluding that the settlement amount, which is double the amount of an earlier proposed settlement reached by Bank of New York Mellon and the Receiver, was in good faith under the *Tech-Bilt* factors. *Tech-Bilt, Inc., v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985). Among other issues raised at oral argument, Manatt asked the Court to determine that arbitrators in its arbitration would have the power to decide both the good faith settlement issue and any offset for Manatt. The Court would have serious concern about arbitrators applying sections 877 and 877.6 if it meant they might decide, contrary to this Order, that the good faith settlement statutes do apply. Because of the limited holding in this Order, the Court does not reach Manatt's contentions.

of contribution among joint tortfeasors and that releasing one joint tortfeasor would serve to release all joint tortfeasors. *Id.* (citing Comment, 9 Hasting L.J. 180, 180-185 (1958)).

Section 877.6 was enacted in 1980 to codify California Supreme Court holdings that a "concurrent tortfeasor may seek partial indemnity from another concurrent tortfeasor on a comparative fault basis" but that "a tortfeasor who has entered into a 'good faith' settlement . . . with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." *Id.* (quoting *Am. Motorcycle Assn. v. Superior Court*, 20 Cal. 3d 578, 604 (1978). A further modification in 1987 amended both sections to reflect, as relevant here, that with "co-obligors on a contract debt," a settling co-obligor could pursue a determination of a good faith settlement and a bar order. *Id.*

The Court will consider tortfeasor and co-obligor status in turn.

### e. Bank of New York Mellon is not a joint tortfeasor, nor is it an alleged joint tortfeasor

As the Court has previously determined, Bank of New York Mellon is not a tortfeasor. Order Granting Motions to Dismiss (Dkt. 302), *In re MedCap*. Plaintiffs' efforts to sue in tort have been repeatedly rejected. *See, e.g.*, *August* 31, 2010 Order (Dkt. 53, *Masonek*) at 8-11; November 17, 2011 Order (Dkt. 227, *Abbate*). The case that is settling is breach of contract; an allegation of "***negligent*** conduct in breaching the [contract]," Sedgwick Corrected Response at 18 (emphasis in original), does not change the distinction between contract and tort. *See Denning v. State* 123 Cal. 316, 323 (1899) (a tort is "any wrong, not consisting in mere breach of contract, for which the law undertakes to give to the injured party some appropriate remedy against the wrongdoer.")

The Court in prior motions practice noted that, "California law clearly prohibits the framing of a breach of contract claim as an action for negligence." *Abbate*, 2011 U.S. Dist. LEXIS 139749 at *23 (C.D. Cal. Nov. 17, 2011); *see also Erlich v. Menezes*, 21 Cal. 4th 543, 522 (1999). *Erlich* outlined the sound reasons for not allowing contract breach cases to sound in tort: "the different objectives underlying tort and contract breach; the importance of

-6-

predictability in assuring commercial stability in contractual dealings; the potential for converting every contract breach into a tort, with accompanying punitive damage recovery, and the preference for legislative action in affording appropriate remedies." *Id.* at 553.[6]

Similarly unpersuasive is an argument building on the broader language of Section 877.6 that allows any party to an action "wherein it is *alleged* that two or more parties are joint tortfeasors" (emphasis added) to seek a determination of a good faith settlement. In *PacifiCare of California v. Bright Medical Associates, Inc.*, 198 Cal. App. 4th 1451, the court rejected a defendant's argument that it was not a tortfeasor because eventually the defendant was found not to have any direct tort liability. The court noted that the defendant made no showing that plaintiffs' "direct liability theories lacked merit as a matter of law," those direct liability claims persisted through trial, and they were still viable at the time of settlement. *Id.* at 1461. Here, any effort to sue in tort was long gone by the time of settlement. There would be little limit to the argument that 877.6 applies whenever a tort claim was ever alleged in a case, even if that claim is no longer viable at the time of settlement.

Finally, both Manatt and Sedgwick argue that sections 877 and 877.6 are to be interpreted broadly "so as to encompass multiple parties whose actions jointly, concurrently, or successively caused the same injury to a plaintiff." Sedgwick Corrected Response at 16 (citing *PacifiCare*, 198 Cal. App. 4th at 1459-60). By this argument, the key is whether "there was one indivisible injury caused by two or more parties." *Id.* (quoting *May v. Miller*, 228 Cal. App. 3d 404, 409 (1991).

---

[6] *Dell'Oca v. Bank of New York Trust Co., N.A.*, 159 Cal. App. 4th 531 (2008), is of no help to Sedgwick because Sedgwick relies on dicta. The *Dell'Oca* court "decline[d] to resolve" the applicability of Section 877. *Id.* at 561. Further, at the point of settlement in *Dell'Oca*, tort causes of action had not been dismissed; here they were dismissed long ago. As the Receiver notes, *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1063-64 (9th Cir. 2011) determined that a strictly liable defendant could be a joint tortfeasor alongside a defendant who owed a duty of reasonable care under state law.

-7-

The main case that the law firms rely on is an unpublished Ninth Circuit decision, *Johnson Industrial Sales v. Strema Sales Corporation*, 224 F. App'x 709 (9th Cir. 2007). *Johnson* involved allegations of one defendant breaching a contract, and the other defendant inducing the breach of that contract and tortuously interfering with it. *See id.* at 710. The panel decided that California courts have focused on whether the actions arose from "one indivisible injury" and, if so, then they have applied Section 877. *Id.* at 712 (citing *May*, 228 Cal. App. 3d 404; *Lafayette v. County of Los* Angeles, 162 Cal. App. 3d 547 (1984)).

But in *May* the argument against finding defendants to be joint tortfeasors was that one defendant was plaintiff's insurer and the other plaintiff's insurance broker. 228 Cal. App. 3d at 406; *see also id.* at 409. Both were sued in tort and the broker was found liable for negligence at trial. Thus, *May* is tied to tort claims, and it is the insurer/broker distinction that the court rejected when it reasoned that "[i]t is irrelevant whether one was the insurance company and one a broker. The only relevant question in applying section 877 is whether there was one indivisible injury caused by two or more parties" *Id.* at 409. *Lafayette* similarly involved tort claims, there for legal malpractice and medical malpractice. 162 Cal. App. 3d at 550.[7]

In *Tiffin Motorhomes, Inc. v. Superior Court*, 202 Cal. App. 4th 24 (2011), the court similarly rejected the broad argument that "any 'wrong' constitutes a 'tort,'" and thus triggers sections 877 and 877.6. *Id.* at 31. In Section II.d above, the Court noted that sections 877 and 877.6 were enacted to respond to particular legal problems. As the *Tiffin* court correctly noted,

---

[7] Even under their broad reading of the statutes, the law firms are not persuasive in arguing that the injury is indivisible—it may simply have some possibility of factual overlap. This is particularly true given the nature of any alleged injury is still being sorted out in their respective ongoing lawsuit and arbitration. In opposing this Motion, Sedgwick says that it is "impossible to claim that the injury is anything other than indivisible, as both sets of plaintiffs even use many of the same allegedly unauthorized loans made by [Medical Capital entities] to buttress their allegations." Sedgwick Corrected Response at 17 n.10. But in its litigation with the Receiver, Sedgwick argues the "impossible," asserting that any alleged injury is divisible, loan by loan, and that certain loans should be dismissed. *See* Memorandum in Support of Sedgwick's Motion to Dismiss (Dkt. 59, *Seaman v. Sedgwick*, SA CV 11-0664).

-8-

"Had the Legislature intended section 877.6 to apply to *any* multiple wrongdoers, it could have said so. It did not." *Id.* at 32.

### f. Bank of New York Mellon is not a co-obligor on a contractual obligation

*Tiffin* noted that the language of sections 877 and 877.6 as to "co-obligors," applies to co-obligors on "a" (singular) contract debt. *Id.* at 29-30 (citing, among other cases, *Herrick Corp. v. Canadian Ins. Co.*, 29 Cal. App. 4th 753, 761 (1994)). It is not at all clear how the law firms could be co-obligors on a contract with Bank of New York Mellon, when only the Bank was a party to the relevant contracts with Medical Capital. The fact that the Receiver alleges that Sedgwick should have known the details of the contracts in this case does not turn Sedgwick into a co-obligor on that contract; Sedgwick does not explain the legal alchemy that it proposes this Court adopt.

### g. Sedgwick's public policy argument offers no basis to change how the statutes are construed

Sedgwick notes that "important public policy considerations against permitting a double recovery also support application of an offset." Sedgwick Corrected Response at 20. At this point, it is not at all clear that double recovery is at issue, given the Receiver's litigation against the law firms is ongoing. And while avoiding double recovery in tort is an important consideration, so too "is assuring the tort victim one complete satisfaction of his claim, neither more nor less." *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987) (citing *Miller v. Apartments & Homes of New Jersey, Inc.,* 646 F.2d 101, 109 (3d Cir.1981). Like other courts that have found sections 877 and 877.6 inapplicable, this Court concludes that Sedgwick's double recovery argument does not offer a reason to construe the statutes to mean something they do not. *Tiffin*, 202 Cal. App. 4th at 33 (quoting *Topa*, 39 Cal. App. 4th at 1344) ("We do not reach this argument because, under the law, we cannot: regardless of its merits in the abstract, the argument does not afford a basis for *construing* the language of Code of Civil Procedure sections 877 and 877.6 as [the insurer] proposes, and we cannot *rewrite* the language. If insurers are to have the relief [the insurer] seeks by way of statute, then [that]

argument must be urged to the Legislature rather than to the courts.")[8]

**III.   Conclusion**

For the above reasons, the Court DENIES Bank of New York Mellon's Motion (Dkt. 1006).

DATED:  July 17, 2013

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

---

[8] Whether the Receivership will apply an offset to Noteholder claims when the Noteholder has recovered some of her loss from a third-party does not bear on sections 877 and 877.6. It simply reflects the fact that receiverships have flexibility to distribute limited resources in a way that best achieves equity.

-10-